**UNITED STATES DSICTRICT COURT
WESTERN DISTRICT OF MICHIGAN**

LINDA PIGUE,

      Plaintiff,

v.

IONIA COUNTY, and
CHAD SHAW, *in his individual and official capacity*

      Defendants.

Case No.

Hon.

---

Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC.
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0875
jmichaels@ctmlawyers.com

---

<u>**PLAINTIFF'S COMPLAINT AND JURY DEMAND**</u>

      Plaintiff, LINDA PIGUE by and through her attorneys, CROSON, TAUB, & MICHAELS, PLLC., hereby alleges as follows:

<u>**INTRODCUTION**</u>

1.      Plaintiff Linda Pigue brings this action pursuant to 42 U.S.C. § 1983 to remedy constitutional due process violations related to her public employment under federal law, as well

1

as violations of Michigan's Whistleblower Protection Act ("WPA"), MCL § 15.361 *et seq.* and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.1101 *et seq.* to remedy unlawful employment discrimination and retaliation.[1]

## PARTIES AND JURISDICTION

2.      Plaintiff Linda Pigue is an individual residing in Ionia County, MI.

3.      Defendant Ionia County is a governmental organization created under the laws of the State of Michigan, and exercising governmental control throughout Ionia County.

4.      Defendant Chad Shaw is an individual employed by Defendant Ionia County as its County Administrator. On information and belief, he resides in Ionia County.

5.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under federal law, namely the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

6.      Jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367 as they arise from the same case and controversy.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

### A.      *Background*

---

[1] Contemporaneously with the filing of this Complaint, Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission under the Federal Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.*  and plans to seek leave of the Court to amend her Complaint after the required exhaustion of her administrative remedies.

8.      Plaintiff Linda Pigue (hereinafter "Plaintiff or Ms. Pigue") is a former employee of Defendant Ionia County. She is a dedicated and experienced financial professional, with decades of experience.

9.      Ms. Pigue is a 76-year-old woman (DOB 2/9/1950), and at all relevant times was one of the oldest employees of Ionia County.

10.     Ms. Pigue has a degree in accounting from MSU and has worked as an internal auditor for the State of Michigan Department of Management and Budget, and in other capacities for other departments. She retired from state service in 2005. After her retirement, Ms. Pigue moved to Ionia County and began managing her family farm.

11.     In 2019, Ms. Pigue decided to return to government service and began working at Ionia County as a bookkeeping/accounts payable clerk. In a matter of months, Ms. Pigue was promoted by the previous County Administrator to Ionia County Finance Director.

12.     During her time as clerk and finance director, Ms. Pigue received positive performance reviews and had no discipline of any kind. She received high praise for her work and Ionia County's stable financial position and record keeping. Ms. Pigue ultimately resigned in good standing as finance director in March 2022.

**B.      *Ms. Pigue returns to Ionia County as Road Department Director***

13.     In 2023, Ms. Pigue returned to Ionia County and was hired as the interim Ionia County Road Department Director and became the permanent director in June 2024.

14.     By way of background, in October 2019, the Ionia County Board of Commissioners abolished the separate legal entity of the Ionia County Road Commission, and created the Ionia County Road Department, a restricted revenue fund that is contained within County government and controlled by the Ionia County Board of Commissioners.

15.    The Ionia County Road Department ("Road Department"), even though it is part of Ionia County, is considered an "Act 51" agency—which refers to PA 51 of 1951. which has restricted funds, and laws and regulations regarding how roadway funds are accounted for, distributed and spent.

16.    Act 51 also created the Michigan Transportation Fund ("MTF") which defines the formula by which the State of Michigan distributes monies for roads to local governmental units, including counties.

17.    Financial budgeting and accounting for local governments is highly regulated, and subject to the State of Michigan's Uniform Budgeting and Accounting Act, MCL 141.421, *et seq.* This Act, among many other things, requires local governments to have a balanced budget, and compile and produce data on revenues and expenditure each year.

18.    As part of this process, the state treasurer creates "Uniform charts of accounts" which are standardized and intended to conform to the uniform standards for the Government Accounting Standards Board ("GASB"). MCL §14.421(1). The Michigan state treasurer also adopts operating procedures and guidance which local governments must follow in the exercise of their duties. *Id.*

19.    In early 2025, the Ionia County Finance Director left to accept another position with another local government. For the interim period, Defendant Shaw, the Ionia County Administrator, told Ms. Pigue that accountants at Maner Costerisan, an accounting firm in Lansing, would direct the Finance Department activities.

20.    As the Road Department utilizes restricted funds and has many accounting duties, the Maner Costerisan Accountant worked in the road department approximately 3-4 days a week and reported to Defendant Shaw.

21.     In July 2025, Ionia County hired Roxanna Craton as Finance Director, even though Ms. Craton had no governmental accounting experience, which immediately caused issues in the department.

22.     Soon after Ms. Craton took over, Ms. Pigue met with Ms. Craton and attempted to explain the various legal requirements of the job, which can be substantially more complex than private sector work.

23.     Specifically, Ms. Pigue discussed many issues with Michigan's Act 51, which as described above, outlines how road funding is to be allocated, tracked, and utilized.

24.     Previously, much of the Finance Department work had been done by Maner Costerisan employees, who Ionia County paid for its professional services. These employees were all highly competent and generally knowledgeable. However, in order to save money, Ionia County leadership wanted to move away from this arrangement and have the newly hired Finance Director and her staff perform this work.

### C.     Ms. Pigue raises numerous issues of compliance regarding Road Department accounting to her supervisor, Defendant Shaw

25.     Despite her attempts at explaining these requirements, Ms. Pigue began to see many issues with budget and accounting operations in Defendant Ionia County. Beginning in mid-2025, on a nearly daily basis, Ms. Pigue observed numerous problems with the Finance Director's performance of her duties.

26.     In particular, under Act 51, the Road Department had a contract to maintain the "trunkline" with the State of Michigan (interstates and M-numbered highways). The state provides funds for local road commissions and departments to maintain these state-owned roads.

27.     As part of this agreement, MDOT will perform a yearly audit of expenditure under this arrangement to ensure state funds are accounted for and being spent properly. This audit

5

requirement requires close collaboration between MDOT and local governments. MDOT will routinely request information from the local government's finance department to ensure they are able to complete their auditing responsibilities.

28.     However, in the late summer of 2025, Ms. Pigue began receiving emails from MDOT stating that the Ionia County finance department was not providing requested information from the auditors, as required by the contract between MDOT and Ionia County, under Act 51.

29.     Ms. Pigue immediately talked to the Maner Costerisan accountant about the missing information. The accountant informed Ms. Pigue that she did not have the time to provide the requested information to MDOT as the Finance Director had reduced the accountant's hours, and she also had day-to-day operational duties.

30.     To resolve ethe issue, Ms. Pigue began assisting and helping with the information requests from the state, even though it was not within her purview.

31.     Under that contract, the State also provides the Road Department with a budget for the year running October 1 through September 30 and pays Ionia County to maintain state "trunkline roads" in accordance with that budget for the contract year.

32.     Each year in August and September, as the contract year comes to a close, the Road Department must have complete and up to date accounting records showing the money spent and money remaining, so that the State could assess the budgetary issues and suggest any expenditures to ensure the budget for the year was used. This occurs on an almost daily basis in close coordination between the State and County.

33.     Ms. Pigue noticed repeatedly that this work was not done—and that Ionia County could not provide accurate information to the State as to how much of its money remained or had

been spent. Ms. Pigue was thus unable to provide the State with accurate information regarding what unobligated funds Ionia County actually had available under the contract.

34.    In addition, Ms. Pigue observed that the Finance Department had not been conducting audits of physical inventory and had not been recording any necessary adjustments to Ionia County's records.

35.    During Ms. Pigue's prior tenure as finance director, she had to deal with similar inventory issues. Upon assuming the role in 2020, she found that the Ionia County Road Department's physical inventory of road materials such as blades, culverts, and gravel did not match the accounting records. Ms. Pigue reported the material financial discrepances to the County Administrator, and a forensic audit was performed.

36.    However, after she left, this work lapsed, and Ionia County no longer had accurate inventory of its materials. Ms. Pigue first asked the Maner Costerisan employee when a complete physical inventory was done and when it was recorded. Ms. Pigue learned that one had not been done since at least 2023.

37.    This physical inventory is crucial, and the value of these materials must be logged and tracked, to ensure compliance and accurate financial records. Ms. Pigue clearly understood any financial professional who signed off on financial statements without assuring physical inventories had been conducted along with any needed recording adjustments, was not living up to the required accounting standards.

38.    Ms. Pigue, at her request, met with Defendant Shaw and someone from Maner Costerisan in the summer of 2025 to discuss these issues in the Defendant Shaw's office. Ms. Pigue raised to Defendant Shaw about a specific instance in which the Finance Department had made a significant error by the Finance department, in which quantity and unit price had been

7

recorded improperly into Ionia County's accounting software. Ms. Pigue explained that this issue had also caused invoices and project costs to be incorrect on the County's financial statements, including misstatements of assets and inventory.

39. Throughout the next few months, Ms. Pigue also learned of repeated instances of incorrect or incomplete invoices being sent to townships in Ionia County. Under Act 51, the County Road department is required to maintain the local roads and receives from the State funds for that purpose.

40. However, the townships often supplement these State funds for local roads with their own funds. To do so, townships enter into an agreement with the Ionia County Road department to perform specific needed repair. The Ionia County Road Department then invoices the township for the work performed, which the township pays out of its own funds.

41. In approximately October 2025, Ms. Pigue received calls from Township supervisors identifying issues with invoices not matching the agreements between the Townships and Ionia County.

42. Specifically, Ms. Pigue learned several invoices were wrong and improperly charged townships for labor and equipment, overhead, and/or a "fringe rate" amount. These invoices were not just wrong but violated contracts with the Townships.

43. Ms. Pigue immediately spoke to the accountants from Maner Costerisan and the Finance Department staff to report the erroneous invoices. Ms. Pigue requested records for the transactions, and explained in detail that the County had sent erroneous invoices, and told them to send correct invoices and make any adjustments to the County's financial statements.

44.    Ms. Pigue reasonably believed that each of these problems constituted a potential violation of the contracts with the Townships at a minimum, and could result in material misstatements in financial reports, in violation of the law and governmental accounting standards.

45.    In September, after the issues persisted, Ms. Pigue requested a meeting with Defendant Shaw. In that meeting, Ms. Pigue told Defendant Shaw that that "books were wrong," that invoices were wrong, and that funds were not being tracked.  Ms. Pigue informed Defendant Shaw of her beliefs that funds were not being accounted for, and that the County was not complying with PA 51 or State law.

46.    Mr. Shaw told Ms. Pigue that he would discuss the issues with the Finance Director. Ms. Pigue suggested a meeting with Defendant Shaw and the Finance Director to discuss the issues. Such a meeting did not occur.

47.    In October 2025, Ms. Pigue also learned that the Finance Director had changed Ionia County Road Department past practice regarding payment for personal protective equipment (PPE) for Road Department employees. Specifically, Ms. Pigue learned that the Finance Director was denying reimbursements for employees who were entitled to reimbursement, including employees covered by a collective bargaining agreement

48.    Ionia County Road Department employees work year-round in difficult conditions, needing significant safety gear, including proper shoes and all-weather clothing. Under Ionia County policy and past-practice, the Ionia County Road Department would reimburse employees up to a specific amount for needed safety-related gear.

49.    Ms. Pigue reasonably believed that this was not only a potential unfair labor practice under Michigan's Public Employment Relations Act, ("PERA"), MCL 423.201 *et seq.* Ms. Pigue had supervised union-represented employees for many years and knew that Ionia

9

County as a Public Employer could not unilaterally change the terms and conditions of union member's employment without collective bargaining.

50.     Ms. Pigue also reasonably believed that the County's failure to provide adequate safety gear such as cold weather bibs, steel toed shoes, or other needed materials, could be breach of workplace safety regulations, including the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. § 651 *et seq,* and the Michigan Occupational Safety and Health Act ("MiOSHA") MCL § 408.1001.

51.     In October, Ms. Pigue met once more with Defendant Shaw. Again, Ms. Pigue raised many legal requirements that were not being done, including the lack of responses to MDOT auditors, and that a physical inventory was not conducted. Ms. Pigue asked Defendant Shaw, "why are you keeping a person, who has no experience and can't perform legal requirements of the job?"

52.     In that meeting, Ms. Pigue directly told Defendant Shaw that the books were wrong, that Ionia County needed to report project costs accurately to annual to MDOT in an "Act 51 report" Ms. Pigue stated that these reports to the state would not be accurate and the "books were wrong"

53.     Ms. Pigue also raised the issue regarding the Finance Director's failure to reimburse for safety equipment. Ms. Pigue relayed to Defendant Shaw that these reimbursements were for needed safety equipment, and that the County needed to provide it to comply with the union contract and safety regulations, including MiOSHA and OSHA.

54.     In response, Defendant Shaw stated that he would talk to the Finance Director about the issues.

10

55.     In that meeting, Ms. Pigue directly told Mr. Shaw that the Finance Director's decision to reduce the Maner Costerisan accountant's hours would result in essential tasks not being completed, including conversion to the legally mandated chart of accounts.

56.     Approximately 2 weeks later, Ms. Pigue sent an email to Mr. Shaw asking if the Maner Costerisan Accountant's hours would be restored. Mr. Shaw emailed saying he would not increase those hours, and that he had to rely on the Finance Director to manage her department just as he relied on Ms. Pigue to manage the Road Department. Ms. Pigue sent an email to Mr. Shaw acknowledging his decision and stated that she would let him know of issues with the transition from Maner Costerisan to the Finance Director and her staff.

57.     On November 30, 2025, Ms. Pigue sent the County Administrator an email listing numerous problems with the financial transition. She informed Defendant Shaw that books were not being closed timely, and that revenue of over $1.7 million dollars had not been recorded timely. Ms. Pigue also stated that the transition to new Uniform Chart of Accounts, required by MCL 141.421 and Act 51 was not complete, and no progress had been made. Ms. Pigue also again flagged that the MDOT audit of 2022 was not completed.

58.     Ms. Pigue reasonably believed the items listed in her email were violations of law and that she was alerting Defendant Shaw to this fact.

59.     On December 3, 2025, Ms. Pigue also learned of a change in the health care policy for Ionia County employees that meant County Health Insurance would exclude up to $500,000 in medical bills related to injuries in Auto accidents.

60.     Ms. Pigue, who supervised union employees, knew that this was a material change to health insurance as it was new and had not been bargained for. Ms. Pigue thus reasonably believed this was an unfair labor practice under PERA and a violation of her employees' rights.

11

61.    Ms. Pigue also reasonably believed that under state law, these exclusions meant the County Health Insurance would no longer qualify as a "qualified health care plan" and could jeopardize state funding.

62.    Ms. Pigue emailed the County's insurance broker, and spoke to them, and also emailed the County HR Director, Priscilla Walden to oppose this change and report the issue.

63.    At the same time, Ionia County Sherriff's department union representatives also raised the issue, claiming it could be a violation of past practice and the union contract.

64.    Ultimately, the County stated the change was a "typo" and the benefits booklets were in error and that statements made by the County's insurance agent and Human Resource Director were also in error.

**D.    *Ms. Pigue is terminated without Due Process of Law, and has her good name and Reputation Besmirched.***

65.    Despite these ongoing issues, Ms. Pigue continued to perform her job, and prepared budget amendments and other documents for the various board meetings.

66.    This ended however, when she was abruptly terminated in December 2025.

67.    On December 19, 2025, Defendant Shaw summoned Plaintiff to a meeting at which Ms. Pigue was presented with a "pre-determination" letter notifying her of alleged charges against her at approximately 3:10pm.

68.    During that meeting, Defendant Shaw attempted to provide Ms. Pigue with what it styled as a "Pre-Determination Notice of Potential Disciplinary Action"

69.    This so-called pre-disciplinary notice identified several alleged performance concerns and stated as follows:

No final decision has been made at this time. The purpose of this notice is to inform you of the concerns that have arisen and provide you an opportunity to respond and allow you

12

to present any information you believe should be considered before a determination is made.

70.     The notice concluded stating there was a "predetermination meeting" at which "you will have the opportunity to respond to the concerns outlined above and provide any explanation, clarification or mitigating information you wish the County to consider prior to making an decision as to your employment relationship with the County."

71.     This predetermination notice was a sham. At the very same time it was presented to Ms. Pigue, he provided her with a second document, titled "Notice of termination – loss of Faith in leadership" Ms. Pigue was thus terminated immediately, without due process. There was no predetermination hearing, as the determination had already been made.

72.     During the meeting, Defendant Shaw also presented Ms. Pigue with a pre-filled letter of resignation.

73.     During the meeting, Defendant Shaw repeatedly pressured and threatened Ms. Pigue to sign the resignation letter.  Defendant Shaw repeatedly stated that Ms. Pigue should resign so as not to "tarnish her reputation". This threat was clear; if Ms. Pigue did not resign, he would make sure that her reputation was besmirched.

74.     Ms. Pigue stated she needed to think about the matter, and Defendant Shaw gave her until December 26, 2025, to resign. Ms. Pigue ultimately refused to resign.

**E.      *Defendants deprive Ms. Pigue of her good name and reputation without due process of law.***

75.     Following Ms. Pigues termination from the Ionia County Road Department, Ms. Pigue did not represent the Road Department at the next regularly scheduled Board of Commissioner's meeting.

76.     Accordingly, local press questioned Defendant Shaw regarding the reason for Ms. Pigues's absence. In the initial small article on the matter, Defendant Shaw did not comment, saying only it was a personnel matter.

77.     However, after the deadline for her to resign had passed, Defendant Shaw provided on the record comments to the Ionia Daily News, which reprinted them on January 13, 2026.

78.     Defendant Shaw stated that "the reason for the termination was a lack of faith and the date was December 19."

79.     As a result of these false comments, the Ionia News performed a Freedom of Information act Request Regarding Ms. Pigue. In a follow up article on January 15, 2026, (only two days after the original article) the press repeated the accusations in the supposed "Predetermination" letter, including a "lack of professionalism, failure to delegate responsibility, impeding communications, and employees fear of retaliation." As anticipated by Defendant Shaw, the reporter listed many of the issues from the predetermination letter, which were false and untrue.

80.     Following the termination, Ms. Pigue attempted to file a complaint regarding her termination under the County's personnel policies, which provided for complaints regarding the Ionia County Administrator to go to the Chair of the Board.

81.     The policy provided for a hearing before the board, but instead, Ms. Pigue received a letter back from the Board Chair, on a plain piece of paper, stating that he reviewed and concurred with Defendant Shaw's decision for termination of employment.

82.     Ms. Pigue was not allowed to speak to the Board members or present any information.

14

83.    In March of 2022, the Road Department's road superintendent, Mr. Howard White, was granted a hearing before the County's Personnel Committee, regarding his termination from employment.

84.    Following her termination, she was replaced by Mr. Cody Waite, a substantially younger individual.

85.    The real reason for Ms. Pigue's termination was her age and her reports of violations and suspected violations of law to Ionia County, a public body.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF PROCEDURAL DUE PROCESS
### 42. U..S.C. § 1983 – Amend XIV U.S. Const.
### *(Against all Defendants)*

86.    Plaintiff incorporates by reference all preceding paragraphs.

87.    Plaintiff is a U.S. citizen residing in the United Sates and is entitled to due process of law.

88.    Defendants are all persons who at all relevant times acted under color of state law under 42 U.S.C § 1983,

89.    At all times relevant hereto, as director level public, Plaintiff had a clearly established property right in the terms and conditions of her employment under the 14th Amendment of the U.S. Constitution.

90.    At all times hereto, Ionia County maintained a practice and procedure of providing due process, including notice of charges against employees as well as fundamental due process rights.

91.    Ionia county previously provided notice of charges and hearings to employees in nonunion represented positions.

15

92.    Ms. Pigue also has a protected liberty interest in her good name and reputation.

93.    On December 19, 2025, Defendants did deprive Ms. Pigue of her protected interest in her continued employment when they terminated her without due process of law.

94.    Defendants also did deprive Plaintiff of her right to her name and reputation without due process of law when they made public statements regarding her performance and included false and misleading statements in her notice of predetermination letter, which they knew would be provided to the press and published.

95.    Following her termination, Ms. Pigue, through counsel, requested a name clearing hearing.

96.    Defendants did not provide Plaintiff with the required name clearing hearing.

97.    By this and other actions, Defendants violated Ms. Pigue clearly established rights to due process.

98.    As a direct and proximate result of Defendant's violation of the constitution Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

99.     As a direct and proximate result of Defendant's violation of the constitution, Plaintiff has suffered emotional injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

100.    Defendants' actions were done with reckless disregard of Plaintiff's constitutionally protected civil rights, entitling her to punitive damages.

**COUNT II**

16

**RETALIATION IN VIOLATION OF
THE WHISTLEBLOWERS' PROTECTION ACT
MCL § 15.362**
*(Against all Defendants)*

101.    Plaintiff incorporates by reference all preceding paragraphs.

102.    At all relevant times, Plaintiff was an employee, and Defendant is an employer covered by and within the meaning of the Whistleblowers' Protection Act. MCL § 15.361(a)-(b).

103.    Defendant Shaw at all relevant times was an "employer" as he was an agent of Defendant Ionia County. MCL 15.361 (b).

104.    As described herein, Plaintiff repeatedly made complaints of violations of law or suspected violations of law to employees of Defendant Ionia County.

105.    Defendant Ionia County, and members, agents and employees, constitutes a "Public Body" under the Whistleblowers' Protection Act. MCL § 15.361(d)(iii).

106.    All of Plaintiff's complaints of violations of law or suspected violations of law were made in good faith.

107.    Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

108.    Defendant's actions were motivated by unlawful retaliation against Plaintiff because of her reports of violations of law or suspected violations of law, in violation of MCL § 15.362.

109.    As a direct and proximate result of Defendant's violation of the Whistleblowers' Protection Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

17

110.     As a direct and proximate result of Defendant's violation of the Whistleblowers'

Protection Act, Plaintiff has suffered emotional injury, feelings of depression, emotional and

physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment,

and the physical effects associated therewith, and will so suffer in the future.

**COUNT III**
**AGE DISCRIMINATION IN VIOLATION OF**
**THE ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**MCL § 37.2202(1)(a)**
***(Against all Defendants)***

111.     Plaintiff incorporates by reference all preceding paragraphs.

112.     At all relevant times, Plaintiff is a person, and Defendant Ionia County is an

employer covered by and within the meaning of the Elliott-Larsen Civil Rights Act. MCL §

37.2201(a).

113.     Defendant Shaw at all relevant times was an "employer" as he was an agent of

Defendant Ionia County. MCL 37.2201(a).

114.     Plaintiff is a member of a protected class on account of her age, 75.

115.     Defendant subjected Plaintiff to adverse employment actions, up to and including

termination.

116.     Plaintiff's termination was due to her age.

117.     But for her protected activity, Plaintiff would not have been terminated.

118.     As a direct and proximate result of Defendant's violation of the Elliott-Larsen Civil

Rights Act, Plaintiff has been placed in financial distress and has suffered a loss of earnings and

benefits and will so suffer in the future; she has been required to employ the services of an attorney

to bring this lawsuit and will suffer additional damages in the future.

119.    As a direct and proximate result of Defendant's violation of the Elliott-Larsen Civil Rights Act, Plaintiff has suffered emotional injury, feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Linda Pigue requests the following relief from this Court against Defendants:

a.    Compensatory damages for monetary and nonmonetary loss in whatever amount she is found to be entitled;

b.    Exemplary and punitive damages in whatever amount she is found to be entitled;

c.    A judgment for lost wages and benefits, past and future, in whatever amount she is found to be entitled;

d.    An order of this Court reinstating Plaintiff to the positions she would have if there had been no wrongdoing by Defendants;

e.    An injunction of this Court prohibiting any further unconstitutional or illegal acts by Defendants;

f.    An award of interest, costs and reasonable attorney fees; and

g.    Whatever other equitable relief this Court may find appropriate.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and all relief requested in this Complaint.

Respectfully Submitted,
Croson, Taub, & Michaels, PLLC

19

/s/ Joseph X. Michaels____
Joseph X. Michaels (P79084)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0872
jmichaels@ctmlawyers.com

Dated: March 19, 2026

**UNITED STATES DSICTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

LINDA PIGUE,

     Plaintiff,

                                         Case No.

                                         Hon.

v.

IONIA COUNTY, and
CHAD SHAW, *in his individual and official capacity*

     Defendants.

---

Joseph X. Michaels (P79084)
CROSON, TAUB, & MICHAELS, PLLC.
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Suite 75
Ann Arbor, MI 48108
(734) 519-0875
jmichaels@ctmlawyers.com

---

## PLAINTIFF'S JURY DEMAND

NOW COMES Plaintiff, Linda Pigue, by and through her attorneys, Croson, Taub, & Michaels, PLLC. and hereby demands for a jury trial in the above-captioned matter.

                                     */s/ Joseph X. Michaels*
                                     Joseph X. Michaels (P79084)
                                     Attorney for Plaintiff
                                     455 E. Eisenhower Pkwy, Suite 75
                                     Ann Arbor, MI 48108
                                     (734) 519-0872
                                     jmichaels@ctmlawyers.com

Dated: March 19, 2026